IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

WILLIAM T. TACKER and
JANEY TYNER                                                              PLAINTIFFS

VS.                                                        CIVIL ACTION NO. 3:14cv269

H. MAX SPEIGHT                                                            RESPONDENT

**ORDER**

This cause comes before the court on the motion of plaintiffs William T. Tacker and Janey Tyner to remand this case to the Circuit Court of Pontotoc County. Defendant H. Max Speight has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

On February 20, 2013, plaintiffs filed suit against defendant in the Circuit Court of Pontotoc County, seeking both compensatory and punitive damages, as well as attorneys' fees, arising out of allegations of corporate malfeasance and criminal fraud in relation to the operation of a biodiesel refinery in Monroe County, Mississippi. Defendant has pleaded guilty and is now serving a prison sentence for some of the same conduct at issue in this case, though the merits of this lawsuit are not presently before this court. The issues before the court now are jurisdictional ones, namely whether diversity jurisdiction exists in this case and, if so, whether defendant waived his right to remove it. This court will consider these issues in turn.

For diversity jurisdiction to be proper, it must be established that all plaintiffs have a different citizenship from all defendants. The Fifth Circuit has written that:

1

> It has long been the general rule that complete diversity of parties is required in order that diversity jurisdiction obtain; that is, no party on one side may be a citizen of the same State as any party on the other side. This determination of one's state citizenship for diversity purposes is controlled by federal law, not by the law of any State. As is the case in other areas of federal jurisdiction, the diverse citizenship among adverse parties must be present at the time the complaint is filed. Jurisdiction is unaffected by subsequent changes in the citizenship of the parties. The burden of pleading the diverse citizenship is upon the party invoking federal jurisdiction, and if the diversity jurisdiction is properly challenged, that party also bears the burden of proof. To be a citizen of a State within the meaning of section 1332, a natural person must be both a citizen of the United States, and a domiciliary of that State. For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient.

*Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974)(citations omitted). While both sides provide a less than thorough discussion of the domiciles of the parties in this case, plaintiffs note that Speight was a practicing attorney in Tennessee before he was disbarred, and the docket indicates that he is now imprisoned in that state. While the complaint is vague, perhaps deliberately so, in this regard, it appears that Tacker is a citizen of Mississippi and that Tyner is a citizen of Florida. At any rate, there is no suggestion in the record that either of the plaintiffs have ever been citizens of Tennessee.

Plaintiffs argue that diversity of citizenship is lacking based on the fact that Speight admitted that he was "an officer and director of Biodiesel of Mississippi, Inc." which, they assert, was "formed under the laws of the state of Mississippi" and "was actually doing business in the state of Mississippi." Even accepting these contentions as accurate, however, they do not establish that Speight is himself a citizen of this state for the purposes of determining diversity jurisdiction. Indeed, much of plaintiffs' briefing on this issue appears to be based on the mistaken notion that personal jurisdiction, not diversity of citizenship, is at issue here, as reflected in their statement that "Speight has clearly admitted to 'minimum contacts' with the

State of Mississippi to invoke state court jurisdiction." It seems clear to this court, however, that plaintiff has a different citizenship from both defendants in this case, and diversity of citizenship therefore exists. Plaintiffs do not contest that the amount in controversy is met in this case, and it is thus clear to this court that diversity jurisdiction exists.

The court now turns to what appears to be plaintiffs' primary argument, namely that, even assuming that diversity jurisdiction exists, the removal in this case was improper since defendant waived his right to remove it. Plaintiffs assert that defendant waived his rights in this regard by extensively participating in litigation in state court for close to two years,[1] including by filing a motion to dismiss. Plaintiffs appear to correctly frame the legal issue in this context, writing in their brief that:

> The Fifth Circuit has ruled that a party may lose the right to remove a case by participating in State court proceedings. "A waiver of the right to remove must be clear and unequivocal; the right to removal is not lost by participating in state court proceedings *short of seeking an adjudication on the merits." Tedford v. Warner-Lambert Co.,* 327 F.3d 423, 428 (5th Cir. 2003) (emphasis added). Therefore the key inquiry is if the defendant sought an adjudication on the merits of the case from the State court prior to removal. If so, then removal is improper and remand must be granted.

[Plaintiffs' brief at 5]. Thus, the Fifth Circuit made it clear in *Tedford* that any waiver must be "clear and unequivocal," and this court agrees with plaintiffs that a key issue in this context is whether the dismissal which defendant sought was an adjudication of this case on its merits. Unlike plaintiffs, however, this court concludes that it was not.

It is abundantly clear that the dismissal which defendant sought in state court was as a remedy for plaintiffs' repeated failure to properly respond to discovery. From this court's

---

[1] Plaintiffs note in their briefing, however, that they do not contend that the removal was untimely. The court will therefore explore this issue no further.

3

review of the state court record, it appears that defendant had entirely valid bases for objecting to plaintiffs' stonewalling of discovery, and it further seems clear that a primary purpose of defendant's discovery requests was to allow him to determine whether there were facts supporting the removal of this case to federal court. Indeed, defendant emphasizes that, in the very first paragraph of his answer to the complaint, he made it clear that:

> 1. The complaint does not state an amount of damages being sought, and although there is diversity of citizenship authorizing the matter to be transferred to federal court, the defendant reserves all rights to determine the facts authorizing such removal pursuant to 28 U.S.C. Sections 1441, et seq. This pleading is filed for the purposes of responding to the Complaint in keeping with the deadlines stated in the Summons.

Thus, defendant made it clear at the outset of the litigation that he was interested in removing this case to federal court, pending a determination of whether the $75,000 amount in controversy requirement is met. Consistent with this expression of intent, defendant promptly served discovery upon plaintiffs requesting information regarding the amount of damages they sought.

The fact that plaintiffs repeatedly failed to respond to defendant's discovery requests is quite clear from the record. Defendant mailed his first set of interrogatories to plaintiffs on April 16, 2013. In a September 16, 2013 order, Pontotoc County Circuit Court Judge James L. Roberts, Jr. agreed with defendant that plaintiffs had failed to respond to that discovery, and he compelled them to do so within ninety days. Plaintiffs failed to do so, and, on December 30, 2013, defendant filed the motion to dismiss upon which plaintiffs base their waiver arguments. In that motion, defendant did not seek for the merits of the case to be addressed, to the contrary, he sought dismissal as an extraordinary remedy for plaintiffs' failure to respond to discovery. In a January 24, 2014 order, Judge Roberts dismissed that motion as moot, finding that the "plaintiffs provided a response to these discovery requests on or about January 8, 2014."

4

The court notes that the January 8, 2014 responses referenced by Judge Roberts were less than responsive on the issue of amount in controversy. For example, in responding to a request that he "set forth all amounts you are claiming and the evidence, including copies of documents" supporting same, Tacker merely responded:

> Answer: The amount of damages I suffered is undetermined. I was an am currently imprisoned at the Maxwell Air Force Base. Furthermore, my initial counsel, Rhett Wise charged me $17,000. He charged me another $15,000 after the trial. I am currently incurring additional expenses. Documents will be provided to substantiate these claims, but I do not have access to them at this time.

Tyner's response was similar to that of Tacker.

On April 28, 2014, defendant filed another motion to compel before Judge Roberts, arguing that the plaintiffs' responses were both substantively and procedurally insufficient. The record reveals that counsel for plaintiff sought and obtained a continuance of a hearing on this motion, and a lengthy period of inactivity followed in the case. It was not until December 5, 2014, well over a year and a half since defendant first sought the discovery in question, that plaintiffs first provided an adequate response to defendant's request that the amount of damages they sought be clarified. In that supplemental response, plaintiffs stated that they sought in excess of $ 6 million in damages, thus making abundantly clear the fact that the amount in controversy requirement was met in this case. Defendant filed his removal petition with this court approximately one week later.

It should be obvious from the foregoing discussion that this court does not believe that defendant should be deemed to have waived his right to remove this case by having filed a motion to dismiss based on clear discovery violations relevant to the decision of whether to

remove it in the first place. Indeed, this is not even a close call.[2] Once again, the motion to dismiss in question did not deal with the merits of this case, and, moreover, Judge Roberts did not deal with that motion on its merits, instead dismissing it as moot. Parenthetically, it strikes this court that, given plaintiffs' sustained failure to respond to discovery, they should consider themselves fortunate not to have incurred much harsher discovery sanctions than they did.

It should be noted that, in their reply brief, plaintiffs do not dispute defendant's quite harsh, yet accurate, description of their conduct during discovery, instead dismissing this argument by stating:

> 3. In paragraph 3, the defendant merely complains of discovery disputes in state court. The plaintiff would respond by stating that state court discovery disputes are not grounds for removal to federal court.

This court finds this argument less than persuasive.

Plaintiffs are seeking remand based on an argument that the motion to dismiss filed by defendant constituted a waiver of his right to remove this case. That being the case, it seems quite appropriate to consider the context in which that motion was filed, in particular the fact that its filing was responsive to clear discovery violations relevant to the issue of removal. Taken to their logical conclusion, plaintiffs' arguments would establish a "Catch 22" situation in which

---

[2]Defendant argues that sanctions are in order based on plaintiffs' improperly seeking remand to state court. While the court finds denial of plaintiffs' motion to clearly be in order, it concludes that defendant's act of seeking dismissal in state court gave plaintiffs sufficient basis to seek remand under *Tedford* without facing the possibility of sanctions for doing so.

This court further concludes that any discovery violations committed by plaintiffs in state court were for Judge Roberts, and not this court, to address. Nevertheless, it would strike this court as being quite understandable if the Magistrate Judge were to consider any prior discovery violations committed by plaintiffs in state court, in deciding whether they should be shown leniency with regard to any future discovery violations which they might commit in federal court.

their own unreasonable conduct in discovery might both delay the removal of a case and serve as a basis for seeking remand once it is removed. By consistently failing to provide information which might have allowed defendant to assess the basis for any removal to federal court, plaintiffs invited the sort of dispositive motion which he ultimately filed. It would run contrary to all notions of fairness and equity to allow plaintiffs to use that same filing as the basis for a finding of waiver. Moreover, fairness issues aside, the court finds that defendant's motion to dismiss did not seek an "adjudication on the merits" of the case within the meaning of *Tedford*, and it is certainly not "clear and unequivocal" that defendant waived his right to remove the case. Indeed, it seems "clear and unequivocal" to this court that he did not.

This court therefore concludes that diversity jurisdiction exists in this case and that there is no basis for concluding that defendant waived his right to invoke that jurisdiction through his actions in state court. Plaintiffs' motion to remand will therefore be denied.

It is therefore ordered that plaintiffs' motion to remand is denied.

This, the 11th day of August, 2015

                                            **/s/ MICHAEL P. MILLS**
                                            **UNITED STATES DISTRICT JUDGE**
                                            **NORTHERN DISTRICT OF MISSISSIPPI**